**STATE of Tennessee, Appellee,**

v.

**Sheridan Ray CAGLE, Appellant.**

Court of Criminal Appeals of Tennessee, Knoxville.

Dec. 2, 1981.

A. Benjamin Strand, Jr., Dandridge, W. Gordon Ball, Newport, for appellant.

OPINION

BYERS, Judge.

The defendant has filed a petition for an extraordinary appeal in accordance with Rule 10, T.R.A.P., seeking review of an order of the trial court overruling a plea of double jeopardy. We grant the appeal to consider the issue.[1]

The order of the trial court is affirmed.

On November 27, 1972, Cagle was convicted of first degree murder and was sentenced to serve ninety-nine (99) years. This conviction was affirmed by this Court on November 28, 1973,[2] and certiorari was denied by the Tennessee Supreme Court on March 18, 1974.

On May 29, 1979, Cagle filed a petition for post-conviction relief. On August 17, 1979, the trial court denied the petition. On February 15, 1980, this Court affirmed the action of the trial court in dismissing

1. *See Whitwell v. State*, 520 S.W.2d 338 (Tenn. 1975); *see also Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

2. *Cagle v. State*, 507 S.W.2d 121 (Tenn.Cr.App. 1973).

the petition for post-conviction relief,[3] and the Tennessee Supreme Court denied further review.

On June 10, 1980, Cagle filed a petition for a writ of habeas corpus in the United States District Court, Northeastern Division, at Greeneville, Tennessee. On November 13, 1980, the federal district judge granted the writ, held Cagle had been denied a fair trial because the district attorney general had not revealed exculpatory evidence to Cagle, ordered a new trial, and filed a memorandum opinion.

The state appealed the judgment of the United States District Court, and on July 15, 1981, the United States Court of Appeals for the 6th Circuit affirmed the judgment of the district judge.

Among the findings of the trial court in the May 29, 1979, post-conviction petition filed in the state court was a finding the district attorney general in an effort to obtain incriminating statements from Cagle had placed a T.B.I. agent in the jail cell with Cagle, where he was being held waiting trial.[4] Each time the agent, who was acting in an undercover capacity, engaged Cagle in a discussion about the crime, Cagle stated he did not kill the person for whose murder he was charged. The T.B.I. agent reported these denials to the district attorney general.

After the T.B.I. agent was removed from the cell, an inmate reported Cagle had made incriminating statements to him. This inmate testified for the state in the trial of the case. The district attorney general did not reveal the defendant's denials of guilt made to the T.B.I. agent.[5]

This Court held in the appeal from denial of post-conviction relief the statements made by Cagle to the T.B.I. agent were self-serving and not admissible.

In the subsequent action in federal district court, the court found the statements made by Cagle to the T.B.I. agent became exculpatory evidence after the inmate testified to Cagle's statements which implicated Cagle in the crime. The court held the district attorney general was required to reveal the evidence.

At the hearing on the petition for habeas corpus in the federal court, the district attorney general testified he considered the evidence to be self-serving, inadmissible and not exculpatory.

The defendant contends a retrial on the original murder charge is barred under the double jeopardy prohibition because he alleges the action of the district attorney general in failing to reveal the presence of the T.B.I. agent in the cell with him and the failure to reveal the statements denying guilt amounted to such prosecutorial misconduct or gross negligence as to prohibit a retrial.

The defendant relies upon several federal cases in support of his position, chiefly the cases of *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), and *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 545 (1971). The cases upon which the defendant relies deal with situations wherein a mistrial has been granted prior to a verdict being reached. None deal with a case where a judgment is reached and a new trial is ordered on a post-conviction, collateral proceeding as is the case here.

In *Dinitz*, the Supreme Court held the double jeopardy bar applied if the underlying error is "motivated by bad faith or is undertaken to harass or prejudice the defendant." Retrial is barred where there is "prosecutorial overreaching."

The reason described in the federal cases cited by the defendant for the rule barring a retrial after a mistrial which is procured by action of the prosecution is to prevent the state from forcing a defendant to move

---

3. *Sheridan Ray Cagle v. State*, No. 114 Hamblen County, filed February 15, 1980, at Knoxville.

4. In *State v. Berry*, 592 S.W.2d 553 (Tenn. 1980), the Supreme Court held such action was

improper and any statement showing guilt obtained thereby is inadmissible.

5. There was no *Brady* motion made prior to or during the trial of the murder case.

for a mistrial rather than having the jury reach a verdict. Such rule prevents the prosecution, in a case where it is likely the defendant will be acquitted, from using improper methods to end a trial before a verdict is reached.

In a case such as the one before us, we see no necessity for applying this rule. Here a verdict was reached which was unfavorable to the accused. Whether the evidence which is said to be exculpatory would cause a jury to reach a different verdict is speculative. Indeed, whether the jury in the original trial would have reached a different verdict had this evidence been admitted is speculative. Therefore, we see no reason to apply the rule applicable to mistrials to cases such as the one before us.

The defendant has not suffered a loss which is irretrievable. The evidence may be used in the retrial and may be considered by the jury which must pass upon the merits of the case. Therefore, the rule contended for by the defendant in this appeal is not necessary to protect his rights to a fair trial.

We do not find, nor did the federal court find, the district attorney general acted in bad faith in this matter. The district attorney general believed the evidence to be inadmissible. This Court agreed with his assessment of the evidence. Merely because the federal court took a different view does not imply the district attorney general acted in bad faith.

O'BRIEN and DUNCAN, JJ., concur.

